PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKAH RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>JP BODEN SERVICES INC., a Delaware corporation d/b/a/ BODENUSA.COM,<br><br>          Defendant. | Case No.  3:23-cv-00534-L-WVG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT** |

## I.     INTRODUCTION

Whenever someone watches a video on https://www.bodenusa.com (the "Website"), Defendant secretly report all the details to Meta, Inc (and its subsidiary Facebook): the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 and related relief.

## II.     JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District.  Upon information and belief, many Class members reside in this District.

3.     Defendant is subject to personal jurisdiction because the exercise of jurisdiction over Defendant comports with due process because Defendant has requisite "minimum contacts" with the state of California, such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national website sales to Californians, such that the website "is the equivalent of a physical store in California." Since this case arises out of Defendant's operation of its website directed toward California residents, this Court can "properly exercise personal jurisdiction" over the Defendant.  *See Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## III.     PARTIES

4.     Plaintiff is a resident and citizen of California who resides in this Judicial District.  Plaintiff is also a consumer advocate who played and watched a video in

February 2023 on Defendant's website at the link https://www.bodenusa.com/en-us/boden-quality-clothing#Footer.

5.     Defendant is a for-profit Delaware corporation.  It is the United States subsidiary of a British clothing retailer selling primarily online and by mail order and catalogue.  With annual sales over $300 million, it is one of the world's largest clothing retailers.

## IV.   FACTUAL ALLEGATIONS

### A.   THE FACEBOOK TRACKING PIXEL

6.     Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1] To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

7.     Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

8.     Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom

---

[1]  FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY,
https://www.facebook.com/communitystandards/integrity_authenticity   (last   visited March 15, 2023).
[2]  FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited March 15, 2023).
[3]  FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/20502906038706 (last visited March 15, 2023).
[4]  FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE
YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting  (last  visited March 15, 2023).
[5]   FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited March 15, 2023).

Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

9.      The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

10.     Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

11.     Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

**B.      BODENUSA.COM AND THE FACEBOOK PIXEL**

12.     The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape

---

[6]   FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764  94 (last visited March 15, 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited March 15, 2023).

[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.

[8]   See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited March 15, 2023).

[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited March 15, 2023).

[10] *Id.*

[11] *Id.*

service provider." 18 U.S.C. § 2710(a)(3).  This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).  Defendant discloses information which allows Facebook (and any ordinary person) to identify a user's video-watching behavior.

13.     Part of Defendant's business involves increasing its brand presence via the use of videos.  As such, Defendant is a "video tape service provider" under the VPPA because, as part of its business, Defendant delivers "prerecorded video" content or other "similar audio visual materials." 18 U.S.C. § 2710(a)(4).  Federal courts have interpreted the term, "video tape service provider" to include commercial website owners/operators like Defendant.  *See, e.g.*, *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022); *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *1, *3 & n.2 (N.D. Ga. Nov. 4, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022); *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sep't 12, 2022); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798-99 (N.D. Cal. 2019); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019); *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.2d 482, 485 n.2 (1st Cir. 2016); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

14.     Defendant displays self-hosted video content on their website. The video on this page is configured to play automatically upon visiting the website page.

1

**Figure 1**



2
3
4
5
6
7
8
9
10
11
12

13    15.    Defendant knowingly causes bodenusa.com to host the Facebook tracking

14   Pixel which transmits numerous distinct events to Facebook.[12]

15   **Figure 2**



16
17
18
19
20
21
22

23    16.    Defendant has configured the PageView event to transmit the URL to

24   Facebook:

25
26
27
28

---

[12] This data is derived from a tool created and offered by Facebook.



**Figure 3**

17.    In the above figure, for example, Defendant discloses a webpage's Universal Resource Locator ("URL") to Facebook.

18.    Defendant has configured microdata to disclose the type of content viewed, title, description, and location to Facebook:

**Figure 4**



19.    The video is configured to play automatically upon page view, therefore any page view is equivalent to video view. This in conjunction with the microdata and event data submitted to Facebook provides sufficient evidence to identify the specific video content viewed.

20.   When a visitor views the video on bodenusa.com while logged into Facebook, Defendant knowingly compels a visitor's browser to transmit the c user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendant compelled the browser to send numerous cookies:

**Figure 6**

| Name | Value | Domain | ▲ |
|------|-------|--------|---|
| presence | C%7B%22t3%22... | .facebook.com | |
| fr | 0auqrxWJECvmCh... | .facebook.com | |
| xs | 4%3AKS00ShDBt... | .facebook.com | |
| wd | 1604x949 | .facebook.com | |
| locale | en_US | .facebook.com | |
| datr | IBAZZC5GORfFJjo... | .facebook.com | |
| sb | IBAZZMPHOfgAp... | .facebook.com | |
| c_user | 100090226609015 | .facebook.com | |

The c_user account set forth above in Figure 6 depicts Plaintiff's expert's Facebook ID. Thus, Defendant's assumption that the c_user value set forth in Figure 6, *i.e.*, 100090226609015, is of Plaintiff's Facebook ID is mistaken.

21.   When a visitor's browser has recently logged out of Facebook, Defendant will compel the browser to send a smaller set of cookies:

**Figure 7**

| Name | Value | Domain |
|------|-------|--------|
| fr | 0auqrxWJECvmCh... | .facebook.com |
| wd | 1604x949 | .facebook.com |
| locale | en_US | .facebook.com |
| datr | IBAZZC5GORfFJjo... | .facebook.com |
| sb | IBAZZMPHOfgAp... | .facebook.com |

22. The fr cookie contains an encrypted Facebook ID and browser identifier.[13] The datr cookies also identifies a browser.[14] Facebook, at a minimum, uses the fr cookie to identify particular users.[15]

23. The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[16] As with the fr cookie, Facebook uses the _fbp cookie to identify users. In other words, once the Facebook user's device logs into Facebook, Facebook can connect the user's device to the user's Facebook ID.

**Figure 8**

| Name | | Value | Domain |
|------|--|-------|--------|
| _fbp | ▲ | fb.1.16796810846… | .bodenusa.com |

24. The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting."[17] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[18] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

---

[13] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited March 15, 2023).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited March 15, 2023).
[15] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited March 15, 2023).
[16] FACEBOOK, CONVERSION API, https://developers.facebook.com/docs/marketingapi/conversions-api/parameters/fbp-and-fbc/ (last visited March 15, 2023).
[17] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited March 15, 2023). This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[18] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last visited March 15, 2023). This is also confirmable by tracking network activity.

25.     Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

26.     A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

27.     Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what videos a user has watched on the website.[19]

28.     By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, Defendant knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

29.     By compelling a visitor's browser to disclose the fr and _fbp cookies alongside event data for videos, Defendant knowingly discloses information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

30.     By compelling a visitor's browser to disclose the fr cookie and other browser identifiers alongside event data for videos, Defendant knowingly discloses information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

31.     Facebook confirms that it matches activity on the Website with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[20] The off-site activity report confirms Defendant identifies an individual's video viewing activities.

---

[19] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited March 15, 2023).

[20] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited March 15, 2023).

**C. EXPERIENCE OF PLAINTIFF**

32.    Plaintiff subscribes to Defendant's marketing e-newsletter.   As such, Plaintiff is a "subscriber" and, therefore, a "consumer" under the VPPA.   In addition, Plaintiff is a "purchaser" of goods from Defendant in the past, and is, therefore, a "consumer" under the VPPA.

33.    Further, Plaintiff is a consumer privacy advocates with dual motivations for playing videos on Defendant' Website.   First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant.   Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law.   As a consumer who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified."   *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

34.    In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss.   As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiffs.   *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

35.    When Plaintiff played the video on the Website, Defendant knowingly disclosed event data, which recorded and disclosed the videos' title, description, and URL. Alongside this event data, Defendant also disclosed identifiers and PII for Plaintiff, including the c_user and fr cookies.   In other words, Defendant did exactly what the VPPA prohibits: it disclosed Plaintiff's video viewing habits to a third party.

36.    **In summary, based upon the preceding information transmitted by Defendant to Facebook, Defendant enabled *any* individual who possesses basic reading skills to identify the title of the video viewed by any class member, because the title of every video watched is transmitted by Defendant to Facebook.**

37.     Defendant's conduct is illegal, offensive, and contrary to visitor expectations.

**CLASS ALLEGATIONS**

38.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on any website owned, operated, or controlled by Defendant and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

39.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiffs do not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website and the prevalence of Defendant's products throughout the United States, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

40.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

a)     whether Plaintiff and the Class are within the definition of the term, "consumers," used in the VPPA;

b)     whether Defendant collected Plaintiff's and the Class's PII;

c)     whether Defendant unlawfully disclosed and continues to disclose users' PII in violation of the VPPA;

d)     whether Defendant's disclosures were committed knowingly; and

e)     whether Defendant disclosed Plaintiff's and the Class's PII without consent.

41.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, watched a video on a website

owned, operated, or controlled by Defendant and had PII collected and disclosed by Defendant.

42. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff will fairly and adequately represent and protect the interests of the Class.

43. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## <u>CAUSE OF ACTION</u>

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
### 18 U.S.C. § 2710, *et seq.*

44. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

45. Defendant is a "video tape service providers" that creates, hosts, and delivers videos on its websites, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, *or delivery of prerecorded video* cassette tapes or similar *audio visual materials*." 18 U.S.C. § 2710(a)(4) (emphasis added).

Defendant also uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

46.     Plaintiff and members of the Class are "consumers" as set forth above.  They have also watched videos on a website owned, operated, or controlled by Defendant. 18 U.S.C. § 2710(a)(1) (emphasis added).

47.     Defendant disclosed to a third party, Facebook, Plaintiff's and the Class members' personally identifiable information. Defendant utilized the Facebook Tracking Pixel to compel Plaintiffs' web browser to transfer Plaintiffs' identifying information, like their Facebook IDs, along with Plaintiff's event data, like the title of the videos viewed.

48.     Plaintiff and the Class members played videos offered by Defendant.

49.     Defendant knowingly disclosed Plaintiff's and Class members' PII because Defendant used that data to build audiences on Facebook and retarget them for its advertising campaigns.

50.     Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

51.     Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b.     For an order declaring that Defendant's conduct violates the VPPA;

c.     For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

d.   For prejudgment interest on all amounts awarded;

e.   For injunctive relief to stop the illegal conduct;

f.   For an order awarding Plaintiff and the Class reasonable attorneys' fees, expenses and costs of suit;

For any and all other relief, at law or equity, that may be appropriate.

Dated:  May 25, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott J. Ferrel
Attorneys for Plaintiff

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on May 25, 2023, I electronically filed the foregoing **FIRST**

3

**AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the

4

CM/ECF system which will send notification of such filing via electronic mail to all

5

counsel of record.

6

7

Dated:  May 25, 2023

8

                                     */s/ Scott J. Ferrell*
                                     Scott J. Ferrell

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT                            No. 23-cv-00534-L-WVG