UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKAH RODRIGUEZ, et al,<br><br>Plaintiff,<br><br>v.<br><br>JP BODEN SERVICES INC., a Delaware corporation d/b/a BODENUSA.COM,<br><br>Defendant. | Case No. 23-cv-00534-L-VET<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT MOTION TO COMPEL ARBITRATION [ECF NO. 15]** |

      Pending before the Court in this putative class action asserting violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, is a motion to dismiss and motion to compel arbitration filed by Defendant JP Boden Services ("Boden" or "Defendant"). The Court decides the matters on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court grants the Motion to Dismiss and denies the Motion to Compel Arbitration as moot.

I. FACTUAL BACKGROUND[1]

Plaintiff is a California resident who watched a short snippet of video that played automatically when she visited Defendant's website at the link https://www.bodenusa.com/enus/boden-quality-clothing#Footer in February 2023. Plaintiff subscribes to Defendant's marketing e-newsletter and claims she was interested in learning more about the goods and services offered by Defendant when she visited the site and saw the video.

Defendant is a Delaware corporation and is the United States subsidiary of a British clothing retailer selling primarily online and by mail order and catalogue. Defendant uses video on its website to increase its brand presence.

Whenever someone watches a video on https://www.bodenusa.com (the "Website"), Defendant allegedly reports all the details to Meta, Inc (and its subsidiary Facebook): the visitor's personally identifiable information ("PII"), the titles watched, and more. Defendant utilizes the Facebook tracking Pixel on the Website which transmits numerous distinct events to Facebook. This allows Facebook (and any ordinary person) to identify a user's video watching behavior. A Facebook ID is personally identifiable information which can be used to identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com. Facebook confirms that it matches activity on the Website with a user's profile.

The Complaint alleges that Defendant disclosed Plaintiff's video viewing habits to a third party and enabled any individual who possesses basic reading skills to identify the title of the video viewed by any class member, because the title of every video watched is transmitted by Defendant to Facebook.

//

//

---

[1] The facts are taken from the First Amended Complaint

II.     PROCEDURAL BACKGROUND

On March 24, 2023, Plaintiff filed this putative class action asserting violations of Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). [ECF No. 1.] On May 22, 2023, Defendant filed the first motion to dismiss, which was denied as moot following the filing on May 25, 2023, of Plaintiff's First Amended Complaint. [ECF Nos. 12, 14, 17.]) On May 30, 2023, Defendant filed the present Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Procedure 12(b)(1) and a Motion to Compel Jurisdiction in the alternative. (Motion [ECF No. 15.]) On June 5, 2023, Plaintiff filed a response in opposition to Defendant's first motion to dismiss, which was subsequently deemed moot. (Oppo. [ECF No. 18, 30.]

On June 21, 2023, Plaintiff filed the operative Response in Opposition. (Oppo. [ECF No. 32.]) On June 27, 2023, Defendant filed a Reply. (Reply [ECF No. 33.])

III.    DISCUSSION

*A. Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). Article III requires that: "(1) at least one named plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial judge and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the

3

complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (*quoting Warth v. Seldin*, 422 U.S. 490, 501, (1975)). "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (citation and internal quotation marks omitted).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).

### B. *VPPA Claim*

"The VPPA prohibits a 'video tape service provider' from knowingly disclosing 'personally identifiable information' about one of its consumers 'to any person,' and provides for liquidated damages in the amount of $2,500 for violation of its provisions." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)(citing 18 U.S.C. §§ 2710(b) and 2710(c)(2)). The VPPA protections cover only "consumers" who are defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

Defendant argues that Plaintiff lacks standing to bring her VPPA claim because (1) Plaintiff is not a "purchaser" or "subscriber" as defined by the statute; (2) Defendant Boden is not a "video tape service provider" under VPPA but instead is a clothing retailer, and (3) Boden has not disclosed any "personally identifiable information" within the meaning of VPPA in this circuit. (Mot. at 5-8 [ECF No. 15-1].) The Court addresses each argument in turn.

//

*1. Consumer under VPPA*

In the Complaint, Plaintiff asserts that she "is a 'purchaser' of goods from Defendant in the past," and a "subscriber" to Defendant's marketing e-newsletter, therefore, she is a "consumer" under the VPPA. (FAC ¶ 32). Defendant counters that Plaintiff was not a purchaser of "prerecorded video cassette tapes or similar audio-visual materials" which is what the statute requires." (Mot. at 5). Plaintiff was also not a "subscriber" by virtue of receiving an e-newsletter because the Boden website does not require a subscription to view, and receiving the e-newsletter does not require any type of commitment indicative of a subscription, according to Defendant. (*Id*. at S6).

As previously noted, the VPPA defines a "consumer" as any renter, *purchaser*, or *subscriber* of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1)(emphasis added). The VPPA does not define "purchaser" or "subscriber," therefore the statute must be interpreted to determine the appropriate meanings. "When interpreting a statute, " 'we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' " *Zuress v Donley*, 606 F.3d 1249, 1252-53 (9th Cir. 2010)(citing *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir.1999).) To determine the "ordinary, contemporary, common meaning" of "purchaser" and "subscriber" the Court first looks to the dictionary meanings. *United States v. McNeil*, 362 F.3d 570, 572 (9th Cir. 2004).

The Cambridge Dictionary defines "purchaser" as "the person who buys something." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/purchaser (last visited on January 31, 2024). Here, it is unclear whether Plaintiff purchased any goods from the Boden site at the time she viewed the video. According to Defendant, a person named Rebekah Rodriguez purchased items from the Boden website in 2019, but there is no record of further purchases. In the Complaint, Plaintiff simply states that she was a

5

purchaser of goods from Defendant but makes no assertion that she suffered the complained of injury in association with that purchase in the past. While the Court must accept as true all factual allegations at this stage in the pleadings, a plaintiff must assert "general factual allegations of injury resulting from defendant's conduct" which Plaintiff has not done. *See Warth*, 422 U.S. at 501. The allegations in the Complaint are insufficient to demonstrate that Rodriguez was a "purchaser" under the VPPA.

In the Complaint, Rodriquez asserts that she was a "subscriber" under the VPPA because she receives the Boden email newsletter, but the standard dictionary definition of "subscribe" states that a person must "pay money to an organization in order to receive a product, use a service, or support the organization" *Id*. https://dictionary.cambridge.org/us/dictionary/english/subscribe?q=subscribes (last visited January 31, 2024). Plaintiff does not claim she paid for the email newsletter. However, some courts have expanded the meaning to include "an agreement to receive or be given access to electronic texts or services." *Yershov. v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482, 487 (1st Cir. 2016). The statutory text supports the conclusion that payment is not necessarily required in the context of a VPPA claim, as the drafters could have defined "consumer" to mean "any paid subscriber" but did not. *See generally Elliss v. Cartoon Network, Inc*., 803 F.3d 1251, 1256 (11th Cir. 2015); *Jefferson v. Healthline Media, Inc*., 2023 WL 3668522, *3 (N.D. Cal. May 24, 2023). The VPPA thus applies to both paid and unpaid subscribers.

The inquiry does not end here. The VPPA limits the scope of the term "subscriber" to subscribers of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The VPPA does not qualify what constitutes "goods or services" and Plaintiff suggests a broad definition that would allow a Boden customer to purchase an item of clothing and thereby qualify as a "consumer of goods and services from a video tape service provider." However, "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and

context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006). Thus, the term "subscriber" must be considered in conjunction with "goods and services" of a "video tape service provider" to determine its meaning.

The Court looks first to the purpose of the VPPA. Enacted in 1988, the VPPA was a response to the Washington City Paper's publication of Supreme Court nominee Robert Bork's video rental history. *Mollett*, 795 F.3d at 1065(citing S. Rep. 100–599, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1.) "The paper had obtained (without Judge Bork's knowledge or consent) a list of the 146 films that the Bork family had rented from a Washington, D.C.-area video store." *Id*. The Congressional purpose behind the VPPA, was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id*.

The VPPA defines "video tape service provider" to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made." 18 U.S.C. § 2710(a)(4). Giving the statutory phrase its plain meaning, a "video tape service provider" is "in the business… of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials" meaning that the rental, sale or delivery of audio visual materials is a defining feature, or at least not a *de minimus* feature, of the business. Further support for this interpretation is found in the definition of the term "personally identifiable information" the disclosure of which is only actionable if it is in connection with the request or obtaining of "specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  The statute ties the definition of PII to disclosing information about video materials and not generic consumer goods and services.

Plaintiff's viewing of a six-second loop with no dialogue of a woman walking on the beach of Boden's homepage does not transform Boden into a video cassette service provider. Like many online retailers, Boden loaded a short, generic video on its landing page. In so doing, Boden did not convert itself from an online clothing retailer to a "video tape service provider." Stretching the plain meaning of the phrase "video tape service provider" in this manner does not comport with the statutory purpose of VPPA.

Similarly, the term "consumer" gains meaning only in relation to "video service provider" meaning that the "goods and services" in question are those constituting audio visual materials. *See generally Carter v. Scripps Network, LLC*, 2023 WL 3061858, *5 (S.D.N.Y. Apr. 24, 2023). In *Carter*, the court held that "a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser, or subscriber of audio-visual goods or services, and not goods or services writ [sic] large. *Id*. at * 5. The court further noted that "the scope of a 'consumer,' when read with sections 2710(b)(1) and (a)(4), is cabined by the definition of 'video service provider,' with its focus on the rental, sale or delivery of audio visual materials." *Id*. at * 6. Though not binding on this Court, the reasoning of *Carter* is persuasive. To isolate the understanding of "goods and services" from "video tape service provider" as Plaintiff suggests would ignore the purpose of the statute, which is to prohibit entities which primarily serve as audio video providers from disclosing an individual's viewing history to others.

Plaintiff claims that *Carter* is distinguishable for multiple reasons, including that the court failed to liberally construe the VPPA as required under *Hernandez v. Williams, Zinman, & Parham, PC,* 829 F.3d 1068, 1078-79 (9th Cir. 2016), and because the plaintiff in *Carter* did not assert that they were "purchasers" of "goods or services." (Oppo. at 5). These arguments are unavailing. First, *Hernandez* concerned the Fair Debt Collection Practice Act and not the VPPA. 829 F.3d at 1070 ("As a

"broad remedial statute," . . . the FDCPA must be liberally construed in favor of the consumer in order to effectuate this goal of eliminating abuse.)  Second, it is immaterial that the plaintiff in *Carter* did not assert that they were "purchasers" because in the present case and in *Carter* the plaintiff also claimed they were "subscribers" under the VPPA.

Accordingly, the Complaint does not plausibly allege that Plaintiff acted as a "purchaser" or "subscriber" sufficient to constitute a "consumer" under the VPPA upon viewing a six-second video snippet when she landed on the Boden retail website. Because the protections of the VPPA do not extend to Plaintiff for the foregoing reasons, the Court does not reach Defendant's remaining assertions that the information transmitted was plausibly alleged to be "personally identifiable information." The Court grants Defendant's motion to dismiss without prejudice and with leave to amend. *See* 28 U.S.C. § 1653; *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1561 (9th Cir. 1987)

Upon finding that the Court lacks subject matter jurisdiction, the Court declines to address Defendant's request to compel arbitration and denies the request as moot.

### IV.   CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and the claim is dismissed without prejudice and with leave to amend. Defendant's motion to compel arbitration is denied as moot.

**IT IS SO ORDERED**

Dated:  February 5, 2024

_____
Hon. M. James Lorenz
United States District Judge